# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| v. | : | No. 22-CV- 22-4310 |
| **REAL PROPERTY COMMONLY KNOWN AS 10745 HALDEMAN AVENUE, PHILADELPHIA, PENNSYLVANIA, WITH ALL APPURTENANCES, ATTACHMENTS, AND IMPROVEMENTS THEREON,** | : : : : | |
| **Defendant in Rem.** | : | |
| | : | **JURY TRIAL DEMANDED** |

## COMPLAINT FOR FORFEITURE IN REM

The United States of America, plaintiff herein, by and through its attorneys, Jacqueline C. Romero, United States Attorney, and Sarah L. Grieb and Anthony Scicchitano, Assistant United States Attorneys, in and for the Eastern District of Pennsylvania, in accordance with Rule G(2) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, for its complaint alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action *in rem* to forfeit and condemn to the use and benefit of the United States of America the real property commonly known as 10745 Haldeman Avenue, Philadelphia, Pennsylvania ("Defendant Property"), with all appurtenances, attachments, and improvements thereon, as provided under Rule G of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions. The United States specifically seeks forfeiture of the Defendant Property pursuant to 21 U.S.C. § 881(a)(7), which provides for the

forfeiture of all real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of the Controlled Substances Act punishable by more than one year's imprisonment.

2. Andrew Berkowitz pleaded guilty in the case of *United States of America v. Andrew Berkowitz*, Criminal No. 19-CR-356, to distributing and dispensing controlled substances at 10745 Haldeman Avenue, Philadelphia, Pennsylvania, during the period from 2015 to 2019, in violation of 21 U.S.C. § 841 ("Criminal Action"). On or about May 9, 2022, the Court sentenced Andrew Berkowitz in the Criminal Action to 240 months' imprisonment, and among other things, ordered Berkowitz to pay a total of $3,991,919.81 in restitution, a $40,000.00 criminal fine, a $4,200 special assessment, and a $3,235,949 forfeiture money judgment, and to criminally forfeit the real property known as 10745 Haldeman Avenue, Philadelphia, Pennsylvania, pursuant to 21 U.S.C. § 853. The criminal monetary penalties are partially paid and remain outstanding.

3. On or about March 27, 2020, in a related civil action, *United States v. Andrew M. Berkowitz, M.D. and $1,016,841,66 in U.S. Currency*, Civil Action No. 19-CV-2719, the Court approved a Stipulated Order and Consent Judgment in which Andrew Berkowitz agreed to the forfeiture of the real property known as 10745 Haldeman Avenue, Philadelphia, Pennsylvania, pursuant to 21 U.S.C. § 881(a)(7).

**JURISDICTION AND VENUE**

4. This Court has subject matter and *in rem* jurisdiction over the matter under 28 U.S.C. §§ 1345 (action commenced by the United States) and 1355(a) and (b) (action for forfeiture which may be brought in the district where any of the acts giving rise to forfeiture occurred and in the district where such property is found), respectively.

5. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1355(b)(l) and 28 U.S.C. § 1395(a) and (b), because a civil proceeding for forfeiture of property may be prosecuted in the district court in which any of the acts or omissions giving rise to the forfeiture occurred and/or any district where such property is found.

## THE DEFENDANT IN REM

6. The Defendant Property is the real property commonly known as 10745 Haldeman Avenue, Philadelphia, Pennsylvania, with all appurtenances, improvements, and attachments thereon. The Defendant Property is situated within Philadelphia County, in the Commonwealth of Pennsylvania, within the Eastern District of Pennsylvania, and such property will be within the jurisdiction of this Court during the pendency of this action.

7. The United States does not request authority from the Court to seize the Defendant Property at this time. The United States will, as provided by Supplemental Rule G(3)(a) and 18 U.S.C. § 985(b) and (c)(1):

    a. Post notice of this action and a copy of the Complaint on the Defendant Property;

    b. Serve notice of this action on the Defendant Property owner, and any other person or entity who may claim an interest in the Defendant Property, along with a copy of this Complaint; and

    c. File a Lis Pendens against the Defendant Property.

## REGULATORY BACKGROUND

**I. The Controlled Substances Act**

8. The Controlled Substances Act ("CSA"), 21 U.S.C. § 801, *et seq.*, and its regulations, govern prescription writing and dispensing by practitioners of controlled substances. The CSA establishes strict guidelines "to ensure a sufficient supply for legitimate medical . . . purposes and to deter diversion of controlled substances to illegal purposes. The substances are

3

regulated because of their potential for abuse and likelihood to cause dependence when abused and because of their serious and potentially unsafe nature if not used under proper circumstances." 75 Fed. Reg. 61613 (Oct. 6, 2010).

9. Federal legislation dictates how prescriptions drugs are categorized. Drugs can be placed in Schedules I through V based on, *inter alia*, their "potential for abuse" and whether they have "a currently accepted medical use in treatment in the United States." 21 U.S.C. § 812(b). For example, Schedule II controlled substances are those that have a "high potential for abuse" that "may lead to severe psychological or physical dependence," but have "a currently accepted medical use in treatment in the United States." 21 U.S.C. § 812(b)(2).

10. Pursuant to legislation and administrative action by the Drug Enforcement Administration ("DEA"):

    a. Oxycodone is categorized as a Schedule II controlled substance, *see* 21 C.F.R. § 1308.12;

    b. Quazepam is a benzodiazepine categorized as a Schedule IV controlled substance, *see* 21 C.F.R. § 1308.14;

    c. Tramadol is an opioid categorized as a Schedule IV controlled substance, *see* 21 C.F.R. § 1308.14; and

    d. Eszopiclone is categorized as a Schedule IV controlled substance, *see* 21 C.F.R. § 1308.14.

11. The CSA requires those who manufacture, distribute, or dispense controlled substances, including doctors who write prescriptions for those drugs, to obtain a registration from the DEA. 21 U.S.C. § 822(a). However, a registrant may only distribute or dispense a controlled substance as "authorized by their registration and in conformity with the other provisions of" the CSA. *Id.* § 822(b).

12. Unless dispensed directly or in an emergency, no Schedule II controlled substance may be dispensed without the written prescription of a practitioner, such as a physician. 21 U.S.C. § 829(a). Unless dispensed directly, Schedule III and IV controlled substances also require an effective written or oral prescription. *Id.* § 829(b).

13. For purposes of the CSA, a prescription is only effective if issued for a:

> *legitimate medical purpose* by an individual practitioner *acting in the usual course of his professional practice*. . . . An order purporting to be a prescription issued not in the usual course of professional treatment . . . is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. 829) and . . . the person issuing [such a purported prescription], shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

21 C.F.R. § 1306.04(a) (emphasis added).

14. Responsibility for proper prescribing and dispensing of these drugs rests with the prescribing practitioner. *Id.*

## II. Pennsylvania Standards for Controlled Substance Prescribing

15. The Commonwealth of Pennsylvania imposes a number of additional requirements and standards for physicians who prescribe controlled substances.

16. For example, 49 Pa. Code § 16.92, which governs the prescribing of controlled substances, provides that, when physicians write a prescription for a controlled substance, there must be an initial medical history and physical examination, absent an emergency. "The physical examination shall include an objective evaluation of the heart, lungs, blood pressure and body functions that relate to the patient's specific complaint." § 16.92(b)(1).

17. Section 16.92 also calls for

   a. reevaluations "consistent with the condition diagnosed, the drug or drugs involved, expected results and possible side effects," § 16.92(b)(2);

5

  b.  counseling "about dosage levels, instructions for use, frequency and duration of use and possible side effects," § 16.92(b)(3); and

  c.  "[a]ccurate and complete medical records" that "document the evaluation and care received by patients," including the drug prescribed and the symptoms, diagnosis, and directions upon the initial prescription, § 16.92(b)(4).

## BASIS FOR FORFEITURE

18. The Defendant Property is subject to forfeiture to the United States as it is property that was used to facilitate the commission of the illegal dispensing and distribution of controlled substances pursuant to 21 U.S.C. § 881(a)(7). That statute provides for the forfeiture of all real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of the Controlled Substances Act punishable by more than one year's imprisonment, including 21 U.S.C. § 841.

## FACTUAL ALLEGATIONS

**I.** **Factual Background**

19. Andrew M. Berkowitz, M.D. (hereinafter "Berkowitz") was a medical doctor licensed to practice medicine in the Commonwealth of Pennsylvania.

20. Berkowitz is the sole owner of AMB Real Estate Holdings, LLC.

21. AMB Real Estate Holdings, LLC is the owner of the Defendant Property.

22. Berkowitz operated a medical practice under the name A+ Pain Management (hereinafter "A+") located at the Defendant Property.

23. Berkowitz saw patients at A+.

24. As a doctor of medicine, Berkowitz was authorized to prescribe to his patients Schedule II, III, IV, and V controlled substances and to prescribe medicine to his patients,

including controlled substances, for legitimate medical purposes and in the usual course of professional practice.

## II.     Berkowitz's Illegal Distribution and Dispensing of Controlled Substances

25.     Berkowitz prescribed Oxycodone and supplied patients with a "goodie bag," that was a tote bag bearing A+ logo, containing multiple prescription drugs. The "goodie bags" included controlled substances and other drugs such as Relyyt, Lidocaine, Chlorzoxazone, Cyclobenzaprine, Celecoxib, Nalfon, Tramadol, Eszopiclone, Quazepam, and Relyyks.

26.     Berkowitz dispensed the prescription drugs without examining the patients, taking vital signs of the patients, taking a medical history, or providing counseling, dosing directions, or information regarding side-effects.

27.     Berkowitz submitted claims to insurers for the prescription drugs in the "goodie bags."

28.     Berkowitz prescribed Oxycodone to "pill-seeking" patients in exchange for submitting excessive claims to the patients' insurers for medically unnecessary prescription drugs and for services that he did not render.

29.     From in or about January 2015, through in or about December 2018, Berkowitz knowingly and willfully executed, and aided and abetted, a scheme and artifice to defraud health care benefit programs in connection with the delivery of or payment for health care benefits, items, or services, by means of false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of health care benefit programs, by submitting and causing to be submitted fraudulent health care insurance claims for pharmacy services that were not medically necessary, and that Berkowitz knew were not reimbursable, in violation of 18 U.S.C. § 1347.

30. On or about the following dates, Berkowitz knowingly and intentionally distributed and dispensed, outside the usual course of professional practice and for no legitimate medical purpose, a mixture and substance containing a detectable amount of Schedule II or Schedule IV controlled substances, in violation of 21 U.S.C. § 841(a)(1):

    a. July 2, 2015 – 60 Tramadol (150 mg) and 30 Quazepam (15 mg);

    b. March 3, 2016 – 46 Oxycodone (10 mg);

    c. March 12, 2016 – 46 Oxycodone (10 mg);

    d. March 15, 2016 – 46 Oxycodone (10 mg);

    e. March 29, 2016 – 46 Oxycodone (10 mg), 30 Eszopiclone (1 mg), and 60 Tramadol (150 mg);

    f. August 16, 2016 – 46 Oxycodone (10 mg), 30 Eszopiclone (1 mg), and 30 Tramadol (150 mg);

    g. May 24, 2017 – 80 Oxycodone (5 mg) and 30 Tramadol (150 mg);

    h. June 21, 2017 – 84 Oxycodone (5 mg), 30 Eszopiclone (1 mg), and 30 Tramadol (150 mg);

    i. July 19, 2017 – 84 Oxycodone (5 mg), 30 Eszopiclone (1 mg), and 30 Tramadol (150 mg);

    j. August 16, 2017 – 84 Oxycodone (5 mg), 30 Eszopiclone, (1 mg), and 30 Tramadol (150 mg);

    k. September 15, 2017 – 84 Oxycodone (5 mg), 30 Eszopiclone (1 mg), and 30 Tramadol (150 mg);

    l. May 31, 2018 – 86 Oxycodone (10 mg);

    m. June 28, 2018 – 86 Oxycodone (10 mg);

      n.      July 26, 2018 – 86 Oxycodone (10 mg);

      o.      August 23, 2018 – 43 Oxycodone (10 mg);

      p.      September 20, 2018 – 86 Oxycodone (10 mg);

      q.      October 18, 2018 – 92 Oxycodone (10 mg);

      r.      November 15, 2018 – 92 Oxycodone (10 mg);

      s.      December 20, 2018 – 92 Oxycodone (10 mg);

      t.      January 17, 2019 – 92 Oxycodone (10 mg);

      u.      February 14, 2019 – 92 Oxycodone (10 mg);

      v.      March 14, 2019 – 92 Oxycodone (10 mg); and

      w.      April 18, 2019 – 92 Oxycodone (10 mg).

### III. Criminal Charges, Conviction, and Forfeiture of the Defendant Property

31. On June 25, 2019, in *United States v. Andrew M. Berkowitz*, Criminal No. 19-CR-356, *i.e.*, the Criminal Action, the grand jury for this district returned an Indictment against Andrew Berkowitz charging him with 19 counts of health care fraud, in violation of 18 U.S.C. § 1347 (Counts One through Nineteen), and 23 counts of distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1) (Counts Twenty through Forty-Two). The Indictment alleged the facts set forth above in paragraphs 19, 22-30.

32. The Indictment also included Notices of Forfeiture, which included a notice that, as a result of the violations of 21 U.S.C. § 841(a)(1), Berkowitz shall forfeit any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of such offenses, and any property constituting, or derived from, proceeds obtained directly or indirectly from the commission of such offenses, pursuant to 21 U.S.C. § 853.

33. On November 22, 2019, in the Criminal Action, Berkowitz entered into a Guilty Plea Agreement in which he agreed to plead guilty to the charges in the Indictment, and not to

contest the forfeiture set forth in the notices of forfeiture, all arising from Berkowitz's scheme to defraud health care benefit programs by submitting claims, and obtaining payments, for medically unnecessary prescription drugs that Berkowitz dispensed at his medical practice, and for prescribing medically unnecessary Schedule II and IV controlled substances to "pill seeking" patients for profit.

34. On January 24, 2020, in the Criminal Action, Berkowitz pleaded guilty to the charges in the Indictment, pursuant to the Guilty Plea Agreement.

35. On January 24, 2020, at the plea hearing in the Criminal Action, Berkowitz admitted under oath to the following:

   a. He was a medical doctor licensed in Pennsylvania and permitted to prescribe controlled substances within the usual course of professional practice for a legitimate medical purpose.

   b. He operated a medical practice under the name A+ Pain Management, which was located on Haldeman Avenue, in Philadelphia, Pennsylvania.

   c. At A+, he dispensed multiple prescription drugs, in "goodie bags," to virtually every patient whose insurance would cover the drugs that he had in stock.

   d. The drugs that he dispensed to each patient included a combination of several drugs, including Schedule IV controlled substances such as Tramadol, Eszopiclone, and Quazepam.

   e. He dispensed the prescription drugs for profit without any meaningful assessment of the medical necessity or whether the drugs had a legitimate

     purpose, and he submitted claims for reimbursement falsely asserting that the drugs were medically necessary for the patients.

    f. He prescribed oxycodone, a Schedule II controlled substance, to pill-seeking patients in exchange for submitting excessive claims to the patients' insurance for the medically unnecessary prescription drugs.

36. On May 9, 2022, the Honorable Paul S. Diamond, United States District Court Judge, sentenced Berkowitz in the Criminal Action to 240 months' imprisonment, to be followed by five years' supervised release, and to pay restitution of $3,991,919.81, a criminal fine of $40,000, a special assessment of $4,200, and forfeiture.

37. On May 11, 2022, in the Criminal Action, Judge Diamond entered a Judgment and Preliminary Order of Forfeiture, finding, among other things, that 10745 Haldeman Avenue, Philadelphia, Pennsylvania, was property that was used, or intended to use, in any manner or part, to commit, or to facilitate the commission of Berkowitz's violations of 21 U.S.C. § 841(a)(1), charged in Counts Twenty through Forty-Two. Judge Diamond ordered criminal forfeiture of 10745 Haldeman Avenue, Philadelphia, Pennsylvania against Berkowitz.

## IV. Stipulated Order and Consent Judgment to Forfeiture of the Defendant Property in the Related Civil Action

38. On or about March 16, 2020, Berkowitz signed and entered into a Stipulated Order and Consent Judgment in the related Civil Action commenced by the United States. *United States v. Andrew M. Berkowitz, M.D. and $1,016,841.66 in U.S. Currency*, Civil Action No. 19-CV-2719.

39. On March 27, 2020, the Honorable Jan E. Dubois, United States District Court Judge, signed and approved the Stipulated Order and Consent Judgment in that case.

40. Under the terms of the Stipulated Order and Consent Judgment, Berkowitz agreed to the facts set forth in paragraphs 19-22 above.

41. Under the terms of the Stipulated Order and Consent Judgment, Berkowitz also agreed, individually and as the representative of AMB Real Estate Holdings, LLC, that:

   a. The Defendant Property is forfeitable under 21 U.S.C. § 881(a)(7), as real property used and intended to be used to commit and to facilitate the commission of the violations of 21 U.S.C. § 841(a).

   b. Berkowitz agreed to pay the United States $1,016,841.66 in United States currency, as a substitute res for the Defendant Property and a property in Atlantic City, within 14 days of Berkowitz signing the Stipulated Order and Consent Judgment.

   c. Berkowitz and AMB Real Estate Holdings, LLC agreed to forfeit their right, title, and interest in the $1,016,841.66.

   d. If Berkowitz failed to wire the $1,016,841.66 within the agreed on 14-day period, Berkowitz agreed to the forfeiture of the Defendant Property under the same terms and conditions.

42. Berkowitz failed to wire $1,016,841.66 in funds within the 14-day period provided under Stipulated Order and Consent Judgment. Berkowitz has not wired the funds to date.

43. As a result of Berkowitz's failure to pay the $1,016,841.66 in funds within the time prescribed under the Stipulated Order and Consent Judgment, and in accordance with the terms of the Stipulated Order and Consent Judgment, Berkowitz consented, individually and as the representative of AMB Real Estate Holdings, LLC, to the forfeiture of the Defendant

Property pursuant to 21 U.S.C. § 881(a)(7), as real property used and intended to be used to commit and to facilitate the commission of the violations of 21 U.S.C. § 841(a).

## CLAIM FOR FORFEITURE

44. By reason of the foregoing facts, there is reason to believe that the Defendant Property constitutes real property used and intended to be used to commit and to facilitate the commission of the illegal dispensing and distribution of controlled substances in violation of the Controlled Substances Act punishable by more than one year's imprisonment.

45. Therefore, the Defendant Property is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7).

WHEREFORE, the plaintiff, United States of America, requests:

1. The Defendant Property be proceeded against according to the law and the rules of this Court, and that due notice be given to all the interested parties to appear and show cause why forfeiture should not be decreed.

2. The Court, for the reasons set forth herein, adjudges and decrees that the Defendant Property be forfeited to the United States of America and disposed of in accordance

with existing laws, together with costs, and for such other relief as this Court deems proper and just.

                                      Respectfully submitted,

                                      JACQUELINE C. ROMERO
                                      United States Attorney

                                      SARAH L. GRIEB
                                      Assistant United States Attorney
                                      Chief, Asset Recovery and
                                      Financial Litigation Section

                                      */s/ Anthony D. Scicchitano*
                                      ANTHONY D. SCICCHITANO
                                      Assistant United States Attorney

Dated: October 27, 2022

## VERIFICATION

DIANA HUFFMAN, being of legal age, verifies and, pursuant to 28 U.S.C. § 1746(2), declares and states as follows:

1. I am a Special Agent with the Federal Bureau of Investigation assigned to investigate this matter.

2. I have reviewed the foregoing Complaint for Forfeiture *in Rem* and know the contents thereof, and that the matters contained in the Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

3. The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a special agent.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on October 27, 2022 at Philadelphia, Pennsylvania.

*Diana Huffman*
DIANA HUFFMAN
Special Agent
Federal Bureau of Investigation